IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRUCE DUNCAN,                          :

     Plaintiff,                    :

v.                                     :   Civil Action No. GLR-15-736

OFFICER C. MCKENZIE, et al.,           :

     Defendants.                   :

### MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants', Correctional Officer Christopher McKenzie, Lieutenant Bradley Wilt, and Warden Bobby Shearin (collectively, the "Corrections Defendants"), Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 20), and Defendant's, Wexford Health Sources, Inc. ("Wexford"), Motion to Dismiss and/or, in the Alternative, Motion for Summary Judgment (ECF No. 22) and Motion to Quash (ECF No. 32).  Also pending before the Court is pro se Plaintiff Bruce Duncan's Motion for Leave to Amend his Complaint (ECF No. 29). The Motions are ripe for disposition.

The Court, having reviewed the Motions and the parties' briefs, finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2014).  For the reasons that follow, the Court will grant the Corrections Defendants' and Wexford's Motions for Summary Judgment, deny Duncan's Motion for Leave to Amend his Complaint, and deny as moot Wexford's Motion to Quash.

## I.   BACKGROUND

At all times relevant to his Complaint, Duncan was an inmate at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland.  Officer McKenzie, Lieutenant Wilt, and Warden Shearin were part of NBCI's corrections staff.  Wexford provided health care services to NBCI inmates.

In September 2013, NBCI was on "lock-down," meaning that the privileges and movements of inmates within the institution were restricted due to security concerns.  During this time, inmates were not permitted to eat in the cafeteria; instead, NBCI personnel delivered meals to inmates in their cells.  NBCI personnel would pass food trays through a security slot (also known as a "feed up slot"), which is a rectangular opening in the doors to the prison cells.  NBCI personnel can open, close, and lock the security slot from outside the cell, but inmates can prevent the slot from being closed by sticking an arm or other appendage through the opening.

On September 13, 2013, Officer McKenzie was responsible for collecting food trays from the inmates in Housing Unit 3, where Duncan was housed.  While Officer McKenzie was collecting the trays, Duncan was inside his cell speaking with his tier officer about retrieving his sheets and clothing from the laundry facility.  Duncan concedes that while speaking to his tier officer, his hand was protruding outside the security slot.

(Compl. at 4, ECF No. 1).  Duncan alleges that because he was "not getting anywhere with the tier officer," he asked to speak with a sergeant.  (Id.).  The parties offer competing accounts of what ensued (the "Incident").

According to Duncan, Officer McKenzie approached Duncan's cell and without saying anything, sprayed his entire can of mace in Duncan's face, eyes, and mouth while yelling racial epithets at Duncan.  According to Officer McKenzie, when he attempted to close the security slot to Duncan's cell after collecting Duncan's food tray, Duncan stuck his arm in the slot to thwart Officer McKenzie's efforts.  Officer McKenzie asked Duncan to remove his arm, but Duncan refused.  Officer McKenzie then advised Plaintiff that refusing to remove his arm would result in force being used, including using pepper spray[1] to gain compliance.  Duncan again refused.  Officer McKenzie then gave Duncan a direct order to remove his arm from the security slot, but Duncan remained defiant and used profane language.  Officer McKenzie proceeded to disperse a "short burst" of pepper spray in Duncan's facial area.  (Officer McKenzie Decl. ¶ 7, ECF No. 20-2).  Duncan's cellmate received secondary exposure to the pepper spray.

---

[1] Duncan refers to the chemical substance sprayed in his face as "mace."  The Corrections Defendants contend that the NBCI corrections staff discontinued the use of mace approximately ten years ago.  (Lieutenant Wilt Decl. ¶ 5, ECF No. 20-3).  The Corrections Defendants maintain that Officer McKenzie used pepper spray in the Incident.  (Id.).

Shortly after the Incident, other members of the NBCI corrections staff transported Duncan and his cellmate to the medical room in Housing Unit 3 where they could be treated.   Nurse Michelle Schultz, a Wexford employee, examined Duncan and explained that although she would not personally wash the pepper spray off of Duncan, he would receive a decontamination shower. Duncan then received his decontamination shower, but he alleges that the water was "boiling and sc[a]lding hot" and his request to adjust the water temperature was denied.   (Compl. at 6).   Duncan further complains that although his cellmate received shower shoes, soap, a washcloth, and a clean set of clothes to wear after his decontamination shower, Duncan was denied all of these items.

Later that day, Duncan talked to Lieutenant Wilt about the conditions of Duncan's decontamination shower.   Duncan alleges that Lieutenant Wilt told him to "deal with it" because it was Duncan's fault that he was exposed to pepper spray.   (Id. at 7). Duncan then requested that Lieutenant Wilt provide him a cold shower, but Lieutenant Wilt refused.

In March 2014—approximately six months after the Incident— Duncan began complaining about eye irritation purportedly related to the Incident.   Duncan asserts that instead of applying a saline solution to his eyes, Wexford employees provided him contact lens solution and artificial tears.   Duncan alleges that those

substances only exacerbated his eye irritation and disrupted his vision.

Duncan initiated this action on March 16, 2015, raising 42 U.S.C. § 1983 (2012) claims for excessive use of force and failure to provide medical care associated with the Incident. (ECF No. 1). The Corrections Defendants and Wexford filed Motions to Dismiss or, in the Alternative, Motions for Summary Judgment on September 1 and September 4, 2015, respectively. (ECF Nos. 20, 22). Duncan filed Oppositions on September 23, 2015 (ECF Nos. 26, 27), and Wexford submitted a Reply on October 13, 2015 (ECF No. 28). On October 30, 2015, Duncan filed a Motion for Leave to Amend his Complaint (ECF No. 29), requesting leave to add Nurse Schultz as a defendant; it is unopposed. On the same date, Duncan filed two requests for documents from NBCI and Wexford. (ECF Nos. 30, 31). Duncan filed his requests under the Freedom of Information Act, 5 U.S.C. §§ 552 _et seq._ (2012) and the Maryland Public Information Act, Md.Code Ann., State Gov't §§ 10-612 _et seq._ (West 2015). On November 11, 2015, Wexford filed a Motion to Quash these requests (ECF No. 32); it is unopposed.

## II.   DISCUSSION

### A. Motions to Dismiss or, in the Alternative, Motions for Summary Judgment

#### 1.   Standard of Review

Defendants style their Motions as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56.   A motion styled in this manner implicates the Court's discretion under Rule 12(d).   See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436-37 (D.Md. 2011), aff'd sub nom., Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md., 684 F.3d 462 (4th Cir. 2012).   Pursuant to Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."

The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'"   Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).   "This discretion 'should be exercised with great caution and attention to the parties' procedural rights.'"   Id.

(quoting Federal Practice & Procedure § 1366, at 149). When exercising this discretion, the Court should assess whether considering materials beyond the pleadings "'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." Id. (quoting Federal Practice & Procedure § 1366, at 165-67). Other than these factors, the Court is guided by the United States Court of Appeals for the Fourth Circuit's two-part test for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion. Under this test, the "parties [must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and "the parties [must] first 'be afforded a reasonable opportunity for discovery.'" Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). "[T]he party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more

time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). Rule 56(d) provides that the Court may deny or continue a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The Court should deny a non-moving party's Rule 56(d) request for additional discovery when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

Here, Defendants caption their Motions in the alternative for summary judgment and attach matters beyond Duncan's Complaint for the Court's consideration. Duncan, in addition to submitting his own exhibits to oppose summary judgment, has filed two requests for information. Duncan requests that Defendants provide copies of all the purchase orders for pepper spray decontamination chemicals NBCI procured in 2012-2014 and a copy of the written procedure for decontaminating an inmate following an incident of pepper spraying. Duncan also requests a variety of statistics. Considering his pro se status and the prohibition against exalting form over substance, see Monge v. Portofino Ristorante, 751

F.Supp.2d 789, 792 n.1 (D.Md. 2010), the Court will construe Duncan's requests as Rule 56(d) discovery requests. Because none of the information Duncan seeks is material to whether the Defendants used excessive force or failed to provide medical care in this case, however, the Court will deny Duncan's requests. Additionally, the Court concludes that because Defendants' and Duncan's extra-pleading materials are comprehensive, these materials will facilitate the disposition of this action and discovery is not required before ruling on summary judgment. Thus, the Court will construe Defendants' Motions as motions for summary judgment.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Once a motion for summary judgment is properly

made and supported, the opposing party has the burden of showing that a genuine dispute of material fact exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986). There is a genuine dispute of material fact when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmovant's favor. <u>Anderson</u>, 477 U.S. at 248.

**2. Analysis**

 **a. The Corrections Defendants' Motion for Summary Judgment**

  **i. Failure to Exhaust Administrative Remedies Defense**

The Corrections Defendants first argue that Duncan failed to exhaust his administrative remedies. The Court will deny the Corrections Defendants' Motion for Summary Judgment on this affirmative defense because they fail to demonstrate that Duncan's appeal to the Inmate Grievance Office ("IGO") was procedurally defective.

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (2012). The PLRA's exhaustion provision requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through

10

all available stages in the administrative process. <u>Chase v. Peay</u>, 286 F.Supp.2d 523, 530 (D.Md. 2003), <u>aff'd</u>, 98 F.App'x 253 (4th Cir. 2004). Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement, however, and does not impose a heightened pleading requirement on the prisoner. <u>Anderson v. XYZ Corr. Health Servs., Inc.</u>, 407 F.3d 674, 678, 681 (4th Cir. 2005). Rather, an inmate's failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove. <u>Id.</u> at 681.

Maryland has established an Administrative Remedy Procedure ("ARP") whereby inmates can file complaints related to their conditions of confinement. <u>Blake v. Ross</u>, 787 F.3d 693, 697 (4th Cir.), <u>cert. granted</u>, 136 S.Ct. 614 (2015); <u>see</u> Md.Code Regs. § 12.07.01.01 (2016). "The ARP involves a three-step process: the inmate files a request for remedy with the warden, then appeals a denial to the Commissioner of Corrections, and finally appeals any subsequent denial to the [IGO]." <u>Blake</u>, 787 F.3d at 697. To satisfy the PLRA's exhaustion requirement, an inmate must pursue his complaint through all three steps. <u>See Chase v. Peay</u>, 286 F.Supp.2d 523, 530 (D.Md. 2003), <u>aff'd</u>, 98 F.App'x 253 (4th Cir. 2004).

On September 26, 2013, Duncan submitted an ARP request challenging Officer McKenzie's alleged excessive use of force during the Incident ("ARP-NBCI-2998-13"). (Corrections Defs.'

Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. Ex. 3, at 10-11, ECF No. 20-4).   On October 8, 2013, Warden Shearin dismissed ARP-NBCI-2998-13, concluding that Duncan's allegations were "without merit."   (Id. at 9).   A week later, Duncan appealed to the Commissioner of Corrections.   (ECF No. 26-1 at 9).   On December 30, 2013, Duncan filed an appeal with the IGO.   (Id. at 16-17).

The Corrections Defendants attempt to demonstrate that Duncan did not exhaust administrative remedies because his IGO appeal was procedurally defective.   They submit a declaration from Scott S. Oakley, the Executive Director of the IGO, in which Oakley details Duncan's IGO appeal history.   (Oakley Decl., ECF No. 20-5). Oakley states that the IGO dismissed the appeal related to ARP-NBCI-2998-13 on April 25, 2014 because Duncan did not provide the documents required by Maryland Code of Regulations 12.07.01.01(B)(9)(a).   (Id. ¶ 3a).   When discussing ARP-NBCI-2998-13, however, Oakley describes the ARP request as addressing Duncan's complaint "about limitations imposed by NBCI officials on the time and manner in which NBCI inmates could submit ARP complaints."   (Id.).   It appears that the ARP request to which Oakley is referring is one other than ARP-NBCI-2998-13. Consequently, the Court finds that the Corrections Defendants have failed to show that Duncan's IGO appeal concerning ARP-NBCI-2998-

13 was procedurally defective and that Duncan failed to exhaust administrative remedies.

### ii.  Supervisory Liability Defense

The Corrections Defendants next contend that even accepting that Officer McKenzie and Lieutenant Wilt violated Duncan's constitutional rights, Warden Shearin cannot be vicariously liable for this misconduct.  The Court agrees and will grant summary judgment for Warden Shearin on all claims.

There is no respondeat superior liability under 42 U.S.C. § 1983.  Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). Thus, "for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'"  Garraghty v. Com. of Va., Dep't of Corr., 52 F.3d 1274, 1280 (4th Cir. 1995) (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)).  It is well-settled, however, that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates."  Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)).  To establish supervisory liability, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so

> inadequate as to show deliberate indifference
> to or tacit authorization of the alleged
> offensive practices [ ]; and (3) that there
> was an affirmative causal link between the
> supervisor's inaction and the particular
> constitutional injury suffered by the
> plaintiff.

Id. (quoting Shaw, 13 F.3d at 799).

Duncan does not present any evidence that would permit a reasonable jury to find that any of the requirements for supervisory liability are present in this case. Accordingly, the Court will grant summary judgment for Warden Shearin on all claims.

### iii. Claim for Excessive Use of Force

Duncan complains that Officer McKenzie used excessive force during the Incident. The Court will grant the Corrections Defendants' Motion for Summary Judgment as to this claim because Officer McKenzie's use of force does not satisfy the objective or subjective components of an Eighth Amendment claim.

Claims that prison officials used excessive force implicate the Eighth Amendment to the United States Constitution. Tedder v. Johnson, 527 F.App'x 269, 272 (4th Cir. 2013) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams, 77 F.3d at 761. To determine whether prison officials have violated an inmate's Eighth Amendment

rights, the Court must analyze objective and subjective components. Id.

Under the objective component, the Court must consider "whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious." Id. "An injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim as long as it rises above the level of de minimus harm." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Hudson v. McMillian, 503 U.S. 1, 9-10 (1992)). Additionally, satisfying the objective component "demands only that the force used be 'nontrivial.'" Evans v. Martin, No. 2:12-CV-03838, 2014 WL 2591281, at *5 (S.D.W.Va. June 10, 2014) (quoting Wilkins v. Gaddy, 559 U.S. 34, 39 (2010)).

Under the subjective component, the Court must assess "whether the prison official acted with a sufficiently culpable state of mind." Williams, 77 F.3d at 761. "The state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" Iko, 535 F.3d at 239 (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)). The Court may consider four non-exclusive factors when assessing whether a prison official acted with wantonness:

> (1) "the need for the application of force";
> (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell;

and (4) "any efforts made to temper the severity of a forceful response."

Id. (quoting Whitley, 475 U.S. at 321).  The Court should also consider "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (quoting Whitley, 475 U.S. at 320-21). Force is applied in a good faith effort to restore order and discipline when a corrections officer administers a single burst of pepper spray after a verbal confrontation initiated by an inmate.  See Trusell v. Bailey, No. 5:09CV101-RJC, 2011 WL 972571, at *7 (W.D.N.C. Mar. 15, 2011).

Furthemore, "[i]t is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." Williams, 77 F.3d at 763 (quoting Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984)).  Mace can be used constitutionally, however, "in small quantities . . . to control a 'recalcitrant inmate.'"  Id. (quoting Landman v. Peyton, 370 F.2d 135, 138 & n.2 (4th Cir. 1966).

Nurse Schultz physically examined Duncan shortly after the Incident.  In her physical examination report, Nurse Schultz did not identify any physical injuries or irregularities. (Corrections Defs.' Mot. to Dismiss or, in the Alternative, Mot.

for Summ. J. Ex. 1 ["Officer McKenzie Decl. with Attachs."], at 7,
ECF No. 20-2).   Instead, Nurse Schultz indicated that Duncan was
merely experiencing an "alteration in comfort" from the pepper
spray exposure and that he was given a decontamination shower.
(Id. at 7, 8).   Duncan had subsequent medical appointments on
October 16, 23, and 30, 2013; November 1 and 9, 2013; and February
21, 2014.  (Def. Wexford's Mot. to Dismiss or, in the Alternative,
Mot. for Summ. J. Ex. A, at 5, 7, 9, 11, 12, 17, ECF No. 22-4).
The medical reports associated with these appointments do not
reflect that Duncan complained of any pain, discomfort, or other
complications from the pepper spray exposure.  (Id.).   Duncan
presents no evidence to dispute these medical reports.  As such,
because there is no evidence that Duncan experienced anything
greater than de minimus harm from the pepper spray exposure, the
Court finds that Officer McKenzie's use of force does not satisfy
the objective component of an Eight Amendment claim.

Even assuming that the objective component is satisfied, the
Court also finds that the subjective component is not satisfied.
Following the incident, Officer McKenzie prepared a Use of Force
Incident Report.  (Officer McKenzie Decl. with Attachs. at 5).  In
his report, Officer McKenzie states that after collecting Duncan's
food tray, Duncan thrust his arm out of the security slot.  (Id.).
Officer McKenzie continues that after making several requests that
Duncan remove his arm from the slot, including one direct order,

Duncan refused to comply and shouted defiant, vulgar epithets. (Id.). Officer McKenzie then states that he "dispersed a short burst of pepper spray to . . . Duncan's facial area." (Id.). Officer McKenzie echoed this statement of facts in his August 19, 2015 Declaration. (Officer McKenzie Decl. ¶¶ 1-9).

In a subsequent investigation of the Incident, Lieutenant Wilt, Officer McKenzie's shift supervisor, confirmed Officer McKenzie's version of the facts. (Officer McKenzie Decl. with Attachs. at 5, 6). Officer McKenzie also issued Duncan a Notice of Inmate Rule Violation arising from the Incident, which Lieutenant Wilt and Officer McKenzie's Shift Commander approved. (Id. at 3-4). In the Notice, Officer McKenzie and Lieutenant Wilt formally cited Duncan for violating Rule 116, tampering with security equipment; Rule 312, interfering with or resisting the performance of staff duties; Rule 400, disobeying an order; and Rule 405, demonstrating disrespect or using vulgar language. (Id. at 3). On October 3, 2013, NBCI personnel held an adjustment hearing to adjudicate the rule violations for which Duncan was charged. (Corrections Defs.' Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. Ex. 3, at 3, ECF No. 20-4). Duncan pleaded guilty to all charges. (Id.).

Based on these undisputed facts, the Court concludes that Officer McKenzie's use of force does not satisfy the subjective component of an Eighth Amendment claim. First, Officer McKenzie

used a small amount of pepper spray to control a recalcitrant inmate. Second, the force was necessary and Officer McKenzie used it in a good faith effort to restore order and discipline. Third, because Officer McKenzie dispersed only one short burst of pepper spray, the force was not greater than necessary and Officer McKenzie made an effort to temper his use of force.

In sum, Officer McKenzie's use of force satisfies neither the objective nor subjective components of an Eighth Amendment claim. Accordingly, the Court will grant the Corrections Defendants' Motion for Summary Judgment on Duncan's claim for excessive use of force.

### iv.  Claim for Failure to Provide Medical Care

Duncan asserts that the Corrections Defendants violated his Eighth Amendment rights when they failed to provide medical care after the Incident. The Court will grant the Corrections Defendants' Motion as to this claim because the Corrections Defendants did not exhibit deliberate indifference.

To prevail on an Eighth Amendment claim for denial of medical care, a prisoner must demonstrate that the action or inaction of prison staff amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that the prisoner was objectively suffering from a serious medical need and the prison staff was subjectively aware of the need, but

failed to either provide medical attention or ensure that it was available.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The medical need must be objectively serious because there is no expectation that prisoners will receive unqualified access to health care.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992).  To satisfy the subjective component of deliberate indifference, the prisoner must show recklessness, which "requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

Here, instead of forcing Duncan to remain in his cell and risk continued exposure to residual pepper spray, NBCI corrections staff removed Duncan from his cell shortly after the Incident. (See Officer McKenzie Decl. with Attachs. at 5, 7) (reflecting that the Incident occurred at 11:15 a.m. and Duncan was present in the medical room at 11:36 a.m.).  After removing Duncan from his cell, NBCI corrections staff transported him directly to the medical room in Housing Unit 3 where he could receive medical treatment.  (Id. at 5).  Nurse Schultz then examined Duncan, determining that he had no physical injuries, but was experiencing an "alteration in comfort" from the pepper spray exposure.  (Id. at 7, 8).  After Nurse Schultz's examination, NBCI corrections staff provided Duncan a shower.  (Id. at 6).  Although the water in the shower may have been hot, there is no evidence that Duncan

was unable to use some of the water to wash himself or that NBCI corrections staff had any control over the temperature.[2]  Following the shower, NBCI corrections staff did not return Duncan to his prior cell where pepper spray might still have been present, instead transferring him to the segregated housing unit.  (See Corrections Defs.' Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. Ex. 2, at 3, ECF No. 20-3) (showing transfer from Housing Unit 3 to Housing Unit 1 on September 13, 2013).

Based on these undisputed facts, the Court finds that the Corrections Defendants did not exhibit deliberate indifference and will grant the Corrections Defendants' Motion as to Duncan's claim for failure to provide medical care.

### b.   Wexford's Motion for Summary Judgment

Duncan also brings a claim against Wexford for failure to provide medical care.  Specifically, Duncan alleges that Wexford violated his Eighth Amendment rights when its employees provided him contact lens solution and artificial tears to manage his eye irritation instead of a saline solution.  The Court will grant Wexford's Motion.

---

[2] As for Duncan's complaint that he did not receive shower shoes, soap, and other accoutrements before his decontamination shower, the Court notes that "conditions that are merely restrictive or even harsh, 'are part of the penalty that criminal offenders pay for their offenses against society.'"  Stroud v. Warden, No. CIV.A. ELH-12-1354, 2012 WL 5839870, at *6 (D.Md. Nov. 16, 2012) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

As explained previously, there is no respondeat superior liability under § 1983. <u>Love-Lane</u>, 355 F.3d at 782. Even assuming Wexford could be vicariously liable under § 1983 for the acts of its employees,[3] "[a]n inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." <u>Jackson v. Sampson</u>, 536 F.App'x 356, 357 (4th Cir. 2013) (citing <u>Russell v. Sheffer</u>, 528 F.2d 318, 319 (4th Cir. 1975)). To the extent Duncan alleges that Wexford employees were negligent in treating his eye irritation, "a complaint that a physician has been negligent in diagnosing or

---

[3] Duncan has also filed a Motion for Leave to add Wexford employee Nurse Schultz as a defendant. (ECF No. 29). Duncan asserts that Nurse Schultz failed to provide him medical care when she refused to personally flush his eyes out after the Incident.

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within twenty-one days after service of a motion under Rule 12(b). Because Duncan did not meet this deadline, the Court may grant him leave to amend his Complaint if "justice so requires." Fed.R.Civ.P. 15(a)(2). The Court should deny leave to amend when leave to amend would be futile. <u>Laber v. Harvey</u>, 438 F.3d 404, 426 (4th Cir. 2006). Leave to amend would be futile when an amended complaint could not survive a motion to dismiss. <u>Perkins v. United States</u>, 55 F.3d 910, 917 (4th Cir. 1995 (first citing <u>Glick v. Koenig</u>, 766 F.2d 265, 268-69 (7th Cir. 1985); then citing 6 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1487 n.26 (2d ed. 1990)).

Here, the Court finds leave to amend would be futile. Because Duncan concedes that he received a decontamination shower, albeit one with hot water, any allegations by Duncan against Nurse Schultz would fail to state a plausible claim for deliberate indifference. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007))). The Court will, therefore, deny Duncan's Motion.

treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 106.  Thus, the Court will grant Wexford's Motion.[4]

### III. CONCLUSION

Based on the foregoing reasons, the Corrections Defendants' and Wexford's Motions for Summary Judgment (ECF Nos. 20, 22) are GRANTED.  Duncan's Motion for Leave to Amend (ECF No. 29) is DENIED and Wexford's Motion to Quash (ECF No. 32) is DENIED AS MOOT.  A separate Order follows.

Entered this 20th day of April, 2016

Very truly yours,

/s/

_____
George L. Russell, III
United States District Judge

---

[4] Because the Court will grant summary judgment for all Defendants on all claims, the Court will deny as moot Wexford's Motion to Quash (ECF No. 32).